# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **FELIX BERTRAND,** | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 3:06-0795** |
| | ) | **Judge Trauger** |
| v. | ) | |
| | ) | |
| **ROADWAY EXPRESS, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This case comes before the court on a Motion for Summary Judgment filed by the defendant (Docket No. 24), to which the plaintiff has responded (Docket No. 28), the defendant has replied (Docket No. 30), and the plaintiff has sur-replied (Docket No. 31). For the reasons discussed herein, the defendant's motion will be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Felix Bertrand, a native of the U.S. Virgin Islands who emigrated to the United States in 1986, has been employed with defendant Roadway Express, Inc. ("Roadway") in one capacity or another from 1996 until May 24, 2006.[1] Roadway is a national trucking company

---

[1] Unless otherwise noted, the facts have been drawn from the plaintiff's Amended Complaint (Docket No. 21), and the plaintiff's Response to the defendant's Statement of Undisputed Material Facts (Docket No. 29). Where the plaintiff has admitted the truth of a statement of fact in his Response, of course, that statement is admitted as true. In addition, the plaintiff has denied certain statements of fact on nebulous grounds such as "perceptions, motive and intent," although the statements at issue do not contain information regarding "perceptions, motive and intent." The plaintiff offers no contradictory evidence—not even an affidavit or statement from the plaintiff—to actually rebut those statements. Therefore, all such statements are also deemed admitted as true. The plaintiff cannot create an issue of fact merely by implying that a question of credibility exists. To create an issue of fact, the plaintiff must actually contradict the defendant's evidence with other evidence. *See* Local Rule 56.01(g) ("Each such

1

with a terminal located in Nashville, and Mr. Bertrand worked at this terminal first as a full-time mechanic and, later, as a casual driver.

At some point in 2005, Mr. Bertrand discussed with Marcus Lucas, another Roadway employee, the process by which he could transition from his then-current position as a mechanic to a position as a casual driver. Under the collective bargaining agreement between Roadway and its employees, in contrast with full-time mechanics, casual drivers do not accrue seniority and are called to work by Roadway only as needed. There are no guarantees of set hours. If Roadway requests a casual driver to work thirty or more days within a two-month period, Roadway is required to hire an additional full-time, regular line haul driver. Under the collective bargaining agreement, Roadway retains discretion as to which casual driver it may use for any given assignment and as to which casual driver it hires as a regular line haul driver, should the conditions arise for doing so.

Because the collective bargaining agreement does not permit a regular employee such as a mechanic to also work as a casual employee, Mr. Bertrand was told that he must resign from Roadway, losing his seniority, and reapply to work as a casual driver. Accordingly, Mr. Broadway resigned from his mechanic position on May 13, 2005, and he subsequently was rehired as a casual driver on May 17, 2005. In addition, on that date, Mr. Broadway began his

---

disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute."); *Irvin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir. 1987) (rejecting affidavits that "amount to nothing more than a denial of the proof . . . without setting forth the basis for such a blanket denial"). Finally, the plaintiff has denied certain statements outright, supporting those denials with portions of his deposition that are actually inapplicable to the statements at issue. The cited deposition testimony does not contradict the statements but, at best, states that the plaintiff does not remember the underlying events. The plaintiff's failure to remember does not create an issue of fact. Accordingly, all such statements are also deemed admitted for the purposes of this motion.

training for the driving position under the tutelage of John Lindberg.

Several weeks later, a strange conversation occurred between Mr. Bertrand and Tom Agee, the Service Team Manager at the Nashville Terminal. As Service Team Manager, Mr. Agee was the ultimate decision maker for hiring regular line haul drivers. On June 4, 2005, Mr. Lindberg brought Mr. Bertrand to meet Mr. Agee, introducing Mr. Bertrand as one "Troi Bailey." Upon shaking hands, Mr. Bertrand repeated that his name was "Troi Bailey." Sensing some game afoot, Mr. Agee asked Mr. Lindberg whether he was sure this person was Troi Bailey. Mr. Lindberg repeated, yes, this was in fact Troi Bailey.

Troi Bailey appears to be a real person, the son of a regular line-driver employed by Roadway. And so, to test the plaintiff, Mr. Agee asked him for the name of his father. The plaintiff could not answer. Mr. Bertrand gave up his ruse and admitted that his name was not "Troi Bailey" but, in fact, Felix Bertrand. Mr. Agee reintroduced the plaintiff to Mr. Lindberg by the plaintiff's real name. Mr. Lindberg apologized and said that he had been confused, having trained a great number of drivers in recent weeks. Mr. Bertrand said that he had pretended to be Troi Bailey in order to find out if Roadway would hire Mr. Bailey as a regular employee. This seems, to the court, an odd explanation: Mr. Bertrand had not himself requested to be a regular line driver at that time and would not do so until several months later, after his supervisors had stopped assigning him work.

A few months thereafter, several issues arose regarding Mr. Bertrand's performance as a casual driver. For instance, on April 3, 2006, Roadway was unable to contact Mr. Bertrand at his hotel and on his cell phone in order to give him his next work assignment. Mr. Bertrand was, at the time, resting at a hotel in Florence, Alabama in accordance with the Department of

Transportation regulations.  Mr. Bertrand's rest period was to expire at 4:00 p.m.  At approximately 6:00 p.m., Roadway attempted to contact Mr. Bertrand, but Mr. Bertrand did not answer either his hotel room phone or his cell phone.  It was not until the following morning, at approximately 5:00 a.m., that Roadway was finally able to reach Mr. Bertrand to give him his next assignment.  By way of explanation, Mr. Bertrand alleges that Roadway "apparently" had the wrong number for the hotel, and that while he was sleeping, his cell phone was turned off.

On April 5, 2006, a similar incident occurred.  Mr. Bertrand had indicated on his driving card that he was next available to drive in accordance with the Department of Transportation regulations at 11:59 p.m. on April 4, 2006.  When Roadway attempted to contact Mr. Bertrand at 3:00 a.m. that next morning, however, Mr. Bertrand did not respond.  Additionally, on April 19, 2006, Mr. Bertrand was scheduled to drive from Huntsville to Nashville, with an arrival time of 6:00 a.m.  Mr. Bertrand did not arrive until 8:00 a.m.  According to the defendant, when Mr. Agee questioned Mr. Bertrand about his delay, Mr. Bertrand claimed that he had been caught in traffic.  However, several other Roadway drivers had traveled the same route as Mr. Bertrand during this very same time and had not been delayed by any traffic problems.

As a result of these incidents, during May 2006, Mr. Agee reviewed Mr. Bertrand's dispatch records to gauge his overall performance.  According to the defendant, this review revealed that Mr. Bertrand had met his delivery and pickup schedules only 45% of the time.  Mr. Agee alleges that "[c]asual drivers should be on time at least 75% of the time, taking into account factors such as weather and traffic," and a review of another casual driver's dispatch record which Mr. Agee performed as a comparison revealed that the other driver had met this 75% benchmark.

4

On May 17, 2006, Mr. Bertrand called Marian Monnig, the Senior Director of Fair Employment Practices for YRCW Worldwide, Inc., Roadway's parent corporation, to complain that he had not yet been promoted to the position of regular line haul driver. Mr. Bertrand did not, at any point during this conversation, suggest that he was being discriminated against due to his race. Later that day, Ms. Monnig notified Sue Harrison, the Senior Manager of Human Resources for Roadway, about Mr. Bertrand's complaint via voice-mail.

Ms. Harrison did not start investigating Mr. Bertrand's complaint until June 1, 2006, when she placed a call to Mr. Agee. Mr. Agee told Ms. Harrison that Mr. Bertrand had never told him that he wanted to be a full-time employee driver, and that Mr. Agee was no longer using Mr. Bertrand as a temporary driver either, due to the performance issues discussed above. Ms. Harrison next called Mr. Betrand, who reiterated his complaint that he had not yet been made a regular line haul driver but, again, did not allege that this failure was due to his race. Ms. Harrison advised Mr. Bertrand that he should discuss this issue with Mr. Agee.

Four days later, on June 5, 2006, Mr. Bertrand approached Mr. Agee and, for the first time, requested to be made a full-time, regular driver. Mr. Agee told Mr. Bertrand that his on-going performance issues made him ineligible for promotion to full-time status. Mr. Agee also told Mr. Bertrand that better performing casual drivers were available to him to hire as regular line haul drivers.

Between June 5, 2006, and September 22, 2006, Roadway promoted seventeen individuals from causal driver to regular driver positions, from both protected and non-protected classes. Mr. Bertrand has not been called to drive since May 24, 2006. The plaintiff alleges that, at some point in time, his brother was employed by Roadway and, during this employment, the

plaintiff's brother filed an employment discrimination suit against Roadway, which the parties settled.

The plaintiff filed this case on August 15, 2006, alleging violation of the Tennessee Human Rights Act, T.C.A. § 4-21-101 *et seq*. On December 12, 2006, after receiving a notice of right to sue from the Equal Employment Opportunity Commission, the plaintiff filed an Amended Complaint alleging: (1) violation of the Tennessee Human Rights Act, (2) discrimination on the basis of race in violation of Title VII of the Civil Rights Act and (3) unlawful retaliation in violation of Title VII of the Civil Rights Act. On May 30, 2007, the defendant moved for summary judgment. (Docket No. 15)

## ANALYSIS

### I.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must demonstrate the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd*., 224 F.3d 797, 800 (6th Cir. 2000). Our function "is not to

6

weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case—provided that the nonmoving party bears the burden for that element—the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To avoid summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). And we must keep in mind that "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. Finally, "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49). With this standard in mind, the court turns to an analysis of the plaintiff's claims.

## III.     Race Discrimination Under Title VII

The plaintiff asserts that the defendant discriminated against him on the basis of race, in violation of Title VII, by failing to promote him. Race discrimination cases under Title VII

7

follow the burden-shifting structure set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[2] After the plaintiff demonstrates a *prima facie* case, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for the adverse employment action. *Id*. If the defendant is able to make that showing, the burden shifts back to the plaintiff to demonstrate that the reason offered by the defendant was not its true motivation, but rather, a pretext for discrimination. *Id*.; *see also Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004); *Penny v. UPS*, 128 F.3d 408, 417 (6th Cir. 1997). Because the plaintiff does not set forth an adequate *prima facie* case summary judgment must be granted as to his race discrimination claim.

### A. *Prima Facie* Case

To establish a *prima facie* case for a discriminatory employment action, the plaintiff must show the following: (1) that he belongs to a protected class, (2) that he was qualified for the job in question, (3) that he suffered an adverse employment action, and (4) that a comparable non-protected person was treated better. *McDonnell Douglas*, 411 U.S. at 802, *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582-83 (6th Cir. 1992). The plaintiff has failed to establish that he was qualified for the job in question, or that a comparable, non-protected person was treated better than he was.

Mr. Bertrand has put forth absolutely no evidence to indicate that he was qualified for the

---

[2]Because "the stated purpose and intent of the [THRA] is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws," *Campell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996) (citing Tenn. Code Ann. § 4-21-101(a)(1)), the analysis of claims under the THRA is the same as under Title VII. *Id*. *See also Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 464 (6th Cir. 2001). Accordingly, the analysis of plaintiff's Title VII claims applies to his THRA claims as well. *Bredesen v. Tennessee Judicial Selection Commission*, 214 S.W.3d 419, 430-31 (Tenn. 2007) (referring to Title VII cases in determining whether a hired party is an employee for the purposes of the THRA).

8

position of line haul driver. Instead, Mr. Bertrand states that this issue:

> depends on entirely on [sic] who one believes. If the jury accepts Mr. Agee's testimony, Bertrand was not qualified to be a driver. But if the jury believes Mr. Bertrand's testimony, there can be no question about his qualifications.

(Docket No. 28 at p. 5) The plaintiff has grievously misunderstood his burden to present information in this case. In order for there to be a question of credibility, Mr. Bertrand would have to present some evidence that actually contradicted Mr. Agee's statements. However, Mr. Bertrand has provided the court with no statement as to what his testimony would be regarding his supposed qualifications. Contrary to the plaintiff's assertions, a "literal swearing match" (Docket No. 28 at p. 2) can exist only where both parties actually present information to the court. The plaintiff cannot meet his *prima facie* burden by planning to question an opposing witness's credibility at trial. In order to have a trial, the plaintiff must provide evidence to the court. Even had the defendant not brought forth its own evidence calling into question the plaintiff's qualifications for the line haul position—such as the plaintiff's failure to actually request being hired to that position and his performance issues in his capacity as a casual driver—the plaintiff nevertheless would have failed to meet his burden to show that he was qualified for the position.

Similarly, with regard to the requirement that "he was treated less favorably than similarly situated non-protected employees," *Mitchell v. Toledo Hosp.*, 964 F.2d at 582, the plaintiff offers that "[t]he only proof in the record is that the position was filled by both protected and non-protected persons." (Docket No. 28 at p. 5) Presumably the plaintiff does not mean to allege that a single employment position was shared, simultaneously, by multiple employees. The sentence may be understood to say that many individuals, from both protected and non-

9

protected classes, were promoted as regular, full-time line drivers during the relevant time period. Either way, the sentence concedes that the plaintiff has not met his burden on this point. It is the plaintiff's burden on a motion for summary judgment to provide the court with some evidence that a similarly situated, non-protected employee was treated better than he, and here he admits that he has not done so.

Remarkably, the plaintiff follows the above sentence with: "Which, again, leaves us with the issue of Roadway's motive . . . definitionally [sic] a jury question." (*Id*. at p. 5) (ellipses in original). In fact, the plaintiff's failure to present the court with information does not leave any motive questions for a jury, "definitional" or otherwise. It is the plaintiff's burden to establish, as a part of his *prima facie* case, that a similarly situated employee was treated better than he was. Similarly situated employees are those who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d at 583. The plaintiff has identified no employees with whom he can be compared whatsoever and has instead admitted that the "only proof in the record" is that many persons, of both protected and unprotected status, have been hired as regular line drivers. There is no jury question here: the plaintiff has simply failed to establish a *prima facie* case. Accordingly, summary judgment will be granted as to the plaintiff's Title VII claim.

**III.     Unlawful Retaliation In Violation Of Title VII**

In addition, the plaintiff asserts that he was unlawfully retaliated against in violation of Title VII. Retaliation cases under Title VII follow the burden-shifting structure set forth in

10

*McDonnell Douglas Corp. v. Green*, 411 U.S. at 802 (1973), outlined above. After the plaintiff demonstrates a *prima facie* case, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant succeeds, the burden shifts back to the plaintiff to demonstrate that the reason offered by the defendant was not its true motivation, but rather, a pretext for discrimination. *Id.*; *see also Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004); *Penny v. UPS*, 128 F.3d 408, 417 (6th Cir. 1997). As in his race discrimination claim, because the plaintiff has failed to establish a *prima facie* case for retaliation, the court will grant summary judgment.

### A. *Prima Facie* Case

To establish a *prima facie* case for a retaliation claim, the plaintiff must show the following: (1) that he engaged in activity protected by Title VII, (2) that the defendants knew he engaged in protected activity, (3) that he suffered an adverse employment decision, and (4) that a causal connection exists between the protected activity and the adverse action taken against the plaintiff. *Siegfield*, 389 F.3d at 565, *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987). The plaintiff has failed to demonstrate any of those requirements, aside from the fact that he suffered an adverse employment decision. Accordingly, summary judgment must be granted as to the plaintiff's retaliation claim.

First, the plaintiff has failed to even allege that he engaged in protected activity. The plaintiff admits that, in his conversations with Ms. Monnig and Ms. Harrison, he never mentioned that the defendant's failure to promote him was related to racial discrimination, and the plaintiff does not offer any evidence that he made complaints of racial discrimination to any other Roadway employee. *See Offutt v. Warren Coutny Reg'l Jail*, 109 Fed Appx. 740, 743 (6th

11

Cir. 2004) (holding that a plaintiff had failed to demonstrate a "protected activity" where she had "produced no evidence that she reasonably believed she was opposing racial discrimination protected by Title VII").

Second, the plaintiff has failed to show that the defendant knew about any protected activity. It is unclear what role the plaintiff's allegations regarding his brother's lawsuit plays in this case. Even if the plaintiff's brother's Title VII suit could be substituted as the plaintiff's own protected activity, however, the plaintiff has failed to allege that Mr. Agee or any other relevant decision-maker had any knowledge of that suit (or any other alleged protected activity). *Mitchell v. Toledo Hosp.*, 964 F.2d at 584 ("It is now quite well established that, in order to withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his [or] her position; a mere 'scintilla of evidence' is insufficient.")

Finally, the plaintiff has failed to demonstrate, or to even allege, a causal connection between any protected activity and the defendant's failure to promote him. *See EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (a plaintiff is required "to put forth *some evidence* to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible") (emphasis added). The plaintiff appears to have labored under the misunderstanding that he could withstand a summary judgment motion without offering any evidence of his own by alluding to questions of perception, motive, and intent on the part of the defendant's affiants. This must be corrected. It has long been the law in this circuit that blanket denials of the defendant's proof is not enough for a plaintiff to prevail on summary judgment. *See Irvin v.*

12

*Airco Carbide*, 837 F.2d at 726. It is equally true that a plaintiff who fails even to properly deny the facts underlying the defendant's proof, and merely implies that a jury might not believe the defendant's witnesses, has not met his *prima facie* burden. Accordingly, summary judgment will be granted as to the plaintiff's claim of unlawful retaliation.

## CONCLUSION

For the reasons stated herein, the defendant's Motion for Summary Judgment will be granted. The plaintiff's claims will be dismissed.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

13